BOARD OF COUNTY COMMISSIONERS OF CREEK COUNTY, OKLAHOMA *v.* SPEER.

Opinion delivered June 5, 1916.

1. CONTRACTS—UNEXECUTED CONTRACT—CHANGE IN TERMS.—It is within the power of contracting parties, as long as the contract remains unexecuted, to make any changes that they may agree upon; the modification amounting to a new contract.

2. CONTRACTS—SALE OF BONDS—MODIFICATION.—Where a contract for the sale of improvement bonds is made, a change in the mutual undertakings of the respective parties concerning the price to be paid, and the acceptance of the bonds by the purchaser, without further delay will constitute a sufficient consideration for the modification of the original contract.

3. CONTRACTS—SALE OF IMPROVEMENT BONDS—AUTHORITY OF COMMISSIONERS—CONFLICT OF LAWS.—A contract for the sale of improvement bonds, was made by the county commissioners of a certain county in Oklahoma, *held,* under the laws of Oklahoma, the board of commissioners had authority to contract with the purchasers of the bonds for the allowance to the latter of compensation for their expenses and services in the preparation and approval of the bonds, and to fix the price of the bonds.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*W. Morris Harrison* for appellant. *Geo. L. Burke* of counsel.

1. The board acts in a representative capacity and its powers are prescribed by statute. It had no power to allow Speer & Dow $1,250 for their services, and no right to make the additional contract and discount the

bonds or reduce the amount to be paid for them.   143 Pac. 1145; Laws of Oklahoma, 1909, ch. 32, Art. 2; 11 Cyc. 467-468; 84 N. W. 822; 2 Kans. 115; 3 Okla. 281; 41 Pac. 592; 44 Ark. 437; 23 Pac. 713; 18 S. E. 374; 73 N. W. 845.

2.   Oral testimony was not admissible.   33 Mo. 168; 71 Tex. 99; 8 S. W. 634; 40 Am. Dec. 135; 77 Tex. 515; 14 S. W. 152; 79 N. W. 34.

3.   The court erred in its declarations of law.   143 Pac. 1145.

*Read & McDonough,* for appellee.

1.   The power to make a contract carries with it the power to set that aside and make another.   143 Pac. 1145 is not in point.   Speer & Dow's claim was properly allowed as expenses to be paid out of the "proceeds" of the sale of the bonds.   For definition of "Proceeds" see 35 So. 828; 51 N. W. 514; 30 Atl. 1032.

2.   An executory contract may be modified by agreement between the parties making a new contract.   9 Cyc. 593; Revised Laws of Okla., 1910 § 1497, p. 507, etc.

3.   Appellee's claim was properly allowed.   It was a compromise.   122 Pac. 999; 142 N. W. 294; 148 Pac. 97.   The board is the general agent of the county and their powers are broad.   139 Pac. 958.

4.   There is nothing in the laws of Oklahoma requiring contracts for the sale of bonds to be in writing.   Laws 1909, § 9; 90 Ind. 362; 11 Cyc. 476; 20 Ga. 328; 113 Ark. 15; Hainer on Mun. Secur. p. 25.

5.   Parol evidence was admissible.   11 Cyc. 401; 145 Ill. 138 ; 46 Ind. 38; 36 Kans. 121; 122 Wis. 85; 122 Pac. 999; 99 N. W. 603.

6.   Time was of the essence of the contract.   35 Cyc. 175, 176; 19 Barb. (N. Y.) 416.   Appellant is estopped. 145 Pac. 932; 3 Okla. 281.   The board ratified in writing the third contract.   152 Pac. 63.   The law presumes that officers perform their duties as required by law.   Harris on Mun. Bonds, p. 124.

McCulloch, C. J.   This is an action instituted by the Board of County Commissioners of the County of Creek, State of Oklahoma, against appellees, Speer & Dow, to recover the sum of $5,300 alleged to be due as a balance on the price of bonds of that county sold by the commissioners to appellees.   The cause was tried before the circuit judge sitting as a jury, and there was a judgment in favor of appellees, from which an appeal has been prosecuted.

Creek County, Oklahoma, acting through the County Board of Commissioners, and upon a vote of the people, issued bonds in the sum of $200,000 for the construction of bridges in the county, and a contract, evidenced by correspondence between the parties and an order spread on the county record, was entered into between the county and Speer & Dow whereby the latter agreed to become the purchasers of the bonds at a premium of $6,050, which, with interest on the bonds from date up to the time of delivery, aggregated the total sum of $207,300. The bonds were to be delivered in monthly installments, beginning June 1, 1910.   When the date for the first delivery arrived, the bonds were not ready, and on June 7th there was an additional agreement modifying the original contract with respect to the time of delivery. On June 21st another agreement was entered into, as evidenced by the order spread on the county record, allowing Speer & Dow the sum of $1,250 for services and expenses in connection with the preparation and approval of the bonds, said sum to be allowed only in reduction of the amount due on the purchase price of the bonds.   At that time Speer & Dow made an advance payment of $2,000 on the price of the bonds.   The contract at that time still contemplated a delivery of the bonds in installments, but on July 26, 1910, before any of the bonds were delivered, there was a still further modification of the contract to the effect that in consideration of immediate acceptance of the bonds, without requiring delayed deliveries according to the original contract, the price would be reduced to the sum of $203,-

250 and credited with the $1,250 allowed for services as aforesaid, thus reducing the additional amount to be paid at the time of delivery to the sum of $200,000. The modification of the contract was entered at large upon the county records, and pursuant thereto the bonds were delivered and paid for.

(1-2) The present suit is to recover the amount of the price of the bonds as originally agreed upon, after deducting the $202,000 actually paid by Speer & Dow. The contention is that the board had no authority to allow Speer & Dow the sum of $1,250, or any sum, for their services, and that the board was also without power to make the additional contract and reduce the amount to be paid for the bonds. It appears from the testimony that after the failure to begin delivery of the bonds at the time specified in the original contract, the parties began negotiations for a modification so as to meet the changed conditions, and the sale was consummated pursuant to the last modification, which enabled the county to realize the stipulated price without delaying the delivery of the bonds as specified in the original contract. Ordinarily it is within the power of contracting parties, as long as the contract remains unexecuted, to make any changes that they may agree upon. The modification, of course, amounts to a new contract. In this instance it appears that the contract was modified in the same way in which the original contract was made, that is to say by correspondence between the parties and by an entry of the terms of the agreement upon the records of the county. The change in the mutual undertakings of the respective parties concerning the price to be paid, and the acceptance of the bonds without further delay, constituted a sufficient consideration for the modification of the original contract.

(3) Counsel for appellant contend that the Board of Commissioners had no authority to enter into an additional agreement, but they bring to our attention no statute or decision from the State of Oklahoma to show that the board was lacking in that authority. On the

contrary, it appears that the Supreme Court of Oklahoma has held that the Board of Commissioners is the general agent of the county and may enter into compromises, even to the extent of compromising a judgment in favor of the county. *Sequoyah County* v. *Helms* (Okla.) 139 Pac. 958; *Ironside* v. *State, ex rel.* (Okla.), 148 Pac. 97.

It is also contended that the board was without authority to enter into a contract for the allowance of compensation to appellees for their expenses and services in preparation and approval of the bonds, but it is seen from the terms of the contract that this was a part of the contract for the sale of the bonds; and since the authority of the Board of Commissioners to fix the price of the bonds was ample, the agreement to make this allowance in the way of reduction of the price of the bonds was within the scope of its authority. The effect of the contract was an agreement to accept the stipulated net amount as the price of the bonds and to consider the services rendered by appellees in fixing the price of the bonds. The decision of the case rests upon the law of the State of Oklahoma with respect to the power of the board, and we find nothing which restricts that power to the extent contended for by counsel.

We are of the opinion, therefore, that the circuit court reached the correct conclusion and the judgment is affirmed.